(No. 63993.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GARY CLARK, Appellant.

*Opinion filed December 30, 1987.*

2

CUNNINGHAM, J., took no part.
MILLER, J., concurring in part and dissenting in part.

Daniel D. Yuhas, Deputy Defender, Jane Raley and Arden J. Lang, Assistant Defenders, and Judith N. Kirby, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman and Kenneth R. Baumgarten, of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

A juvenile petition naming the defendant, Gary Clark, was filed in the circuit court of Macon County seeking to have the defendant, who was born February 7, 1970, made a ward of the court and asking the court to commence proceedings against him pursuant to the Juvenile Court Act (the Act) (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 et seq.). The petition alleged that, on or about July 14, 1984, the defendant had murdered Effie and Prentice Curfman in the course of committing a felony, residential burglary. The petition also alleged that the defendant was involved in a second, unrelated burglary of a business. The State moved to have the defendant tried as an adult under the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 1—1 et seq.) and the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—1—1 et seq.) and requested a transfer hearing pursuant to section 2—7(3) of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)) to determine if proceedings against the defendant should be conducted under the Act or under the Criminal Code. The court held a transfer hearing on the State's motion. At the conclusion of the hearing, the motion was granted.

The State then filed its information against the defendant charging him with multiple offenses in connection with the deaths of Effie and Prentice Curfman. With respect to each of the two deaths, defendant was charged with intentional murder, knowing murder, and felony murder in violation of sections 9—1(a)(1), (a)(2), and (a)(3), respectively, of the Criminal Code. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3).) In addition, he was charged with two counts of home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12—11); two counts of residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3); two counts of robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—1); and one count of aggravated criminal sexual assault of Effie Curfman (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14).

Plea negotiations commenced. The defendant agreed to plead guilty to the intentional murders of Effie and Prentice Curfman in exchange for the dismissal of all other charges. The plea was accepted and judgment was entered on the plea. One week later, the State filed a motion to compel withdrawal of the plea on grounds that the trial court did not give the proper admonition regarding the maximum sentence applicable to defendant's plea. (107 Ill. 2d R. 402(a)(2).) A proper admonition would have informed the defendant that, if he persisted in the plea, the court was *required* to sentence him to natural life imprisonment pursuant to section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)). Under this provision, a sentencing judge must impose a sentence of natural life imprisonment on any defendant convicted of "murdering more than one victim." Defendant's pleas were set aside.

The defendant moved for a change of venue due to adverse publicity. His motion was granted and the case was tried before a jury in the circuit court of Tazewell

County. The jury returned a general verdict of guilty for residential burglary, a verdict of guilty for the robbery of Effie Curfman, and a verdict of guilty for the robbery of Prentice Curfman. The jury was unable to agree to a verdict on the charges of murder, home invasion, and aggravated criminal sexual assault, prompting the court to declare a mistrial as to these charges. The defendant was retried, the jury returning general verdicts of guilty for the murders of both Curfmans. The jury also returned a general verdict of guilty of home invasion and further found the defendant guilty of aggravated criminal sexual assault.

Defendant appealed his convictions urging several errors, chief among which was the inadequacy of the hearing held on the State's motion to transfer the proceedings against him from a juvenile to an adult prosecutorial forum. A divided appellate court affirmed, "find[ing] that there was sufficient evidence to transfer the defendant" and further "find[ing] no abuse of discretion on the part of the trial court in authorizing the transfer to adult prosecution." (144 Ill. App. 3d 420, 427, 428.) The dissent focussed on the fact that neither the prosecution, the defense, nor the court were aware that defendant would be subject to a mandatory sentence of natural life imprisonment if tried as an adult and convicted of murdering both of the Curfmans. The result was that no evidence was presented at the transfer hearing to support a finding that it was in the best interest of the defendant and the public that he be incarcerated not just beyond the age of majority, 21, but for the rest of his life. The case is before this court on defendant's petition for leave to appeal. 107 Ill. 2d R. 315(a).

The principal issue for decision is whether the defendant received a legally adequate transfer hearing under section 2—7(3) of the Juvenile Court Act. Defendant con-

tends that the hearing was inadequate as a matter of law because: (1) no consideration was given to whether or not his best interests or the best interests of society necessitated that he be imprisoned for the remainder of his life and (2) no consideration was given to his social and personal history, particularly as this bears on his rehabilitative potential.

The defendant also raises two challenges under the Illinois Constitution to the imposition of mandatory natural life imprisonment on a juvenile who was only 14 years old at the time of the offenses. The State has moved to strike defendant's constitutional challenges, pointing out that these issues are not before this court because defendant's petition for leave to appeal did not urge reversal on these or any constitutional grounds. We took the State's motion with the case.

We have reviewed defendant's petition and agree that the constitutional issues were not relied upon as points for reversal as required by our Rule 315(b)(3). (107 Ill. 2d R. 315(b)(3); *People v. Anderson* (1986), 112 Ill. 2d 39, 44.) Therefore, we grant the State's motion to strike defendant's constitutional challenges to imposition of natural life imprisonment on a juvenile 14 years of age at the time of committing an offense. Further, given our disposition on the issues surrounding the transfer proceeding, it is not necessary to reach defendant's constitutional arguments.

The remaining issue concerns the adequacy of defendant's transfer hearing. Such hearing is required by statute pursuant to section 2—7(3) of the Act, which provides:

> "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, *after*

*investigation and hearing* but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider *among other matters*: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) *the previous history of the minor*; (5) *whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor*; and (6) *whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).)

However, a juvenile charged, as was the defendant, with the offenses of first degree murder and aggravated criminal sexual assault is tried automatically as an adult if he or she was at least 15 years of age at the time of the alleged offenses. Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(a).

The procedures governing a transfer hearing and the criteria to be considered are controlled by statute. The statute itself is rooted in the constitutional requirement of procedural due process as stated by the Supreme Court in *Kent v. United States* (1966), 383 U.S. 541, 557, 16 L. Ed. 2d 84, 95, 86 S. Ct. 1045, 1055. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 298-300; Ill. Ann. Stat., ch. 37, par. 702—7, Council Commentary, at 84 (Smith-Hurd Supp. 1987).) We turn then to an examination of the transfer hearing held in this case.

The State called Mark Barthelemy, a police officer for the city of Decatur, Illinois. He testified that the defend-

ant admitted breaking into the victims' home, along with Rodney Baltimore, for the purpose of stealing money. Barthelemy testified to the conflicting statements made to police by the defendant and Baltimore, the defendant claiming that the break-in was Baltimore's idea while Baltimore claimed that the break-in was the defendant's idea. No testimony was given nor other evidence presented to establish that the defendant intended to or planned to harm either victim. However, Barthelemy testified to defendant's admission that, while in Effie Curfman's bedroom, he struck her once with a semi-closed fist. The defendant said that he did so because she was getting up and he was afraid that she would recognize him so he pushed her back into bed and left the room. Barthelemy further testified that the defendant claimed to have left the house a short time later. Barthelemy also testified to Baltimore's conflicting statements to the effect that, while he was beating Prentice Curfman, he could hear the defendant beating Effie Curfman.

The State inquired into the defendant's prior involvement with the authorities. Barthelemy stated that the defendant, at age 10, attempted to steal some toy cars; that he was unsuccessful; and that he then acted as a "shield" while a companion attempted to steal the toys. Defendant received a station adjustment, which is a verbal warning from the police. A second station adjustment occurred when the defendant was 12. This incident involved an alleged theft under $150, but the details of this incident were not made known to the court. A third incident involving disorderly conduct allegedly occurred when the defendant was 13. However, Barthelemy stated that, while present, "Gary was never actually involved in [the incident]." It was established that the defendant had never been under court or police supervision or adjudicated a delinquent and made a ward of the court. The State did establish that a juvenile petition

naming defendant and alleging a burglary at the Crane Potato Chip Company in Decatur had been filed on July 5, 1984, nine days before the incident involving the Curfmans.

The State called Robert Ernest, chief probation officer for the Macon County probation department. He testified that he did not know the defendant and that he had not interviewed the defendant. He also testified that he was unaware of any facilities available in Illinois for the treatment or rehabilitation of the defendant. No reasons were given for this conclusion. Ernest gave his opinion that the best interests of the defendant and society required his confinement beyond age 21 but, again, the record contains no reasons in support of this view. Significantly, neither the assistant State's Attorney, defense counsel, the court, nor any witnesses indicated an awareness that transfer of the defendant from juvenile to adult prosecution might result in imprisonment for the remainder of his life and not just "for a period extending beyond his minority."

Defense counsel objected to both of Ernest's opinions regarding the existence of rehabilitative facilities and the necessity of incarcerating the defendant beyond age 21. Counsel argued that Ernest's opinions and, ultimately, the findings of the court should be predicated on facts developed through an investigation rather than on conjecture. Defense counsel's objections were overruled.

The record also indicates that no inquiry was undertaken, as required by the Act, with respect to the social or personal history of the defendant. No information was presented as to his adjustment in school. No information was presented regarding defendant's physical or mental health, particularly as this might bear on defendant's rehabilitative potential. However, the court allowed the defendant's mother to make a short statement in which she stated that the defendant was her only source of

help at home and that she relied on him. At the conclusion of the hearing, the court ordered the defendant transferred:

"Finding there is sufficient evidence upon which a grand jury may be expected to return an indictment; that there is evidence that the alleged offenses were committed in an aggressive and premeditated manner; that the age of the minor is fourteen years; that there are no facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; that the best interests of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his 21st birthday. Finding that the evidence as a whole, including evidence as to the previous history of the minor, as well as the circumstances of the offenses presently alleged, indicates and confirms that it is not in the best interests of the minor and of the public to proceed under the Juvenile Court Act."

Central to determining the legal adequacy of defendant's transfer hearing is an understanding of the purpose and operation of section 2—7(3), the transfer provision of the Act. This provision was enacted after the Supreme Court's decision in *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045. In *Kent*, as here, the issue was the legal adequacy of a transfer hearing to which Kent was entitled by statute. In concluding that Kent's transfer hearing was inadequate as a matter of law, the Court stressed the critical function of such a hearing. "It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of [a] juvenile." (383 U.S. 541, 556, 16 L. Ed. 2d 84, 94, 86 S. Ct. 1045, 1055.) Because of the central significance of a transfer hearing, the Court observed that the juvenile court's discretion to waive jurisdiction must be exercised within the limits of due process and, in addition, must

comport with applicable statutory guidelines. As the Court phrased it, "the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or—*subject to the statutory delimitation*—should waive jurisdiction. But this latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as *compliance with the statutory requirement of a 'full investigation.'*" (Emphasis added.) 383 U.S. 541, 552-53, 16 L. Ed. 2d 84, 92-93, 86 S. Ct. 1045, 1053.

*Kent* was the catalyst for the present version of section 2—7(3), which governs transfer proceedings. Indeed, the statutory criteria set forth in section 2—7(3) to be considered by the juvenile judge in a transfer proceeding "closely parallels the transfer provision * * * interpreted by the United States Supreme Court in *Kent v. [United States]*." Ill. Ann. Stat., ch. 37, par. 702—7, Council Commentary, at 84 (Smith-Hurd Supp. 1987); see also *People v. Taylor* (1979), 76 Ill. 2d 289, 298-300.

The history of the present transfer provision makes it clear that a decision to transfer a juvenile from the jurisdiction of the juvenile court to the jurisdiction of the criminal court requires faithful adherence to the statutory requirements governing the transfer proceeding in light of the purpose of those requirements. A careful analysis of section 2—7(3) convinces us that the purpose of any transfer proceeding is to balance the best interests of the alleged juvenile offender, particularly as these interests relate to his or her potential for rehabilitation, against society's legitimate interest in being protected from criminal victimization perpetrated by minors. In striking this balance, the juvenile judge weighs the facts of the alleged crime, particularly whether or not it was committed in an "aggressive and premeditated manner."

The judge is directed to decide if the facts as presented would support an indictment. On the other side of the balance, the judge considers the age of the alleged offender and his or her previous history, ascertains the availability of treatment and rehabilitative services for the juvenile, and determines "whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).

We note with interest that the legislature itself balanced the competing interests of minor offenders and society where it is alleged that a minor has committed "murder, [or] aggravated criminal sexual assault" and "was at least 15 years of age" at the time of the alleged offense. (Ill. Rev. Stat., 1984 Supp., ch. 37, par. 702—7(6)(a).) Under these circumstances, the legislature struck the balance in favor of societal security by vesting exclusive jurisdiction over these alleged juvenile offenders within the criminal court. In choosing to continue the jurisdiction of the juvenile court over 13- and 14-year-old juveniles suspected of murder or aggravated criminal sexual assault while providing for waiver of jurisdiction and transfer for trial under the Criminal Code, the legislature was reaffirming its preference that the juvenile judge strike the necessary balance as required by section 2—7(3) and the facts of each case.

The State alleged at defendant's transfer hearing that he had murdered two people and committed aggravated criminal sexual assault. Consequently, if the defendant had been 15 years of age at the time he allegedly committed these offenses, he would have been tried automatically as an adult under the Criminal Code. However, the defendant was 14 years of age at the time. Thus, the defendant is a minor whom the legislature in-

tended to benefit from the judicial balancing required by the transfer provision.

Where the juvenile judge considers evidence on the various statutory factors and evidence on any other relevant matters as provided in section 2—7(3), the resulting decision is a product of sound judicial discretion which will not be disturbed on review. (*People v. M.D.* (1984), 101 Ill. 2d 73, 83-84; *People v. Taylor* (1979), 76 Ill. 2d 289, 300-01.) We must decide therefore if the juvenile judge in the instant case properly exercised his discretion in ordering the defendant transferred from the jurisdiction of the juvenile court to that of the criminal court. After a thorough examination of the record reviewed in light of the statutory language and the purpose of the transfer provision, we conclude that the juvenile judge abused his discretion in ordering defendant's transfer.

The history of the transfer provision makes clear that a juvenile judge in a transfer proceeding must weigh relevant statutory and nonstatutory factors in striking the balance for society by transferring the alleged juvenile offender or in striking the balance for the juvenile by retaining jurisdiction. (*People v. M.D.* (1984), 101 Ill. 2d 73, 83-84; *People v. Taylor* (1979), 76 Ill. 2d 289, 299-300.) We believe that a critical nonstatutory element in the instant case is the fact that the defendant allegedly murdered two people, which, upon conviction under the Criminal Code, would result in a mandatory sentence of natural life imprisonment. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c).) It is true, of course, that a sentence of this severity is not precluded by the Act since section 2—7(3) clearly provides for the discretionary transfer of juveniles charged with two or more murders and who are 13 or 14 years of age at the time of the alleged offenses. The Act provides for transfer in these cases even though conviction under the Criminal Code

may result in a sentence of natural life imprisonment. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c).) However, the fact that such a harsh penalty is mandated upon conviction for two murders is a factor to be weighed in determining "whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3)(a)(6).) This statutory factor expressly recognizes that, in balancing the competing interests of the minor offender and society, it may be necessary to incarcerate the minor beyond his or her minority. Nonetheless, where, as here, the choice is between two extremes, incarceration to age 21 under the Act or incarceration for life without possibility of parole under the Criminal Code, adequate balancing calls for consideration of which penalty would best serve both of the interests at stake.

The record before us does not indicate that these two sentencing outcomes were considered. No one at the transfer hearing—not the assistant State's Attorney, defense counsel, or the juvenile judge—indicated any awareness that the defendant would be imprisoned for the remainder of his natural life if tried and convicted under the Criminal Code for murdering the Curfmans. Moreover, after defendant's transfer for trial under the Criminal Code, the assistant State's Attorney and defense counsel entered into a negotiated plea of guilty on two counts of intentional murder in exchange for dismissal of the remaining charges. Defendant's plea was presented to and accepted by the trial court without admonishment as to the mandatory sentence of natural life imprisonment. A short while later, defendant's plea was withdrawn on motion of the State because of the court's failure to give the necessary admonition.

The record makes it abundantly clear that the juvenile judge did not consider whether or not imprisonment of the defendant for the duration of his natural life was in his best interests or was required for the security of society. The judge was unable to weigh this factor in striking the statutory balance because there is not one scintilla of evidence in the record of the transfer proceeding that would have apprised anyone that the transfer could result in a term of natural life imprisonment. We believe, however, that no informed judgment can be made about the disposition which will best serve the alleged juvenile offender and society where, as here, there is not the slightest consideration of how either society or the defendant would benefit by his incarceration until death.

Reading the language of section 2—7(3) in light of its history and applying this language to the instant case, we hold that defendant's transfer hearing was inadequate because the juvenile judge did not weigh the mandatory sentence of natural life imprisonment which defendant would receive if tried and convicted under the Criminal Code for murdering the Curfmans. We further conclude that defendant's transfer hearing was inadequate on two other grounds: failure to investigate the history of the defendant, especially as it related to his potential for rehabilitation, and failure to investigate the availability of rehabilitative services available for the defendant if he were retained under the jurisdiction of the Act.

Section 2—7(3) expressly provides that the juvenile judge consider the "previous history of the minor" and "whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor." (Ill. Rev. Stat. 1983, ch. 37, pars. 702—7(3)(a)(4), (3)(a)(5).) These two factors are interrelated. In the event facilities exist for the treatment or rehabilita-

tion of minor offenders, the judge evaluates their likely effectiveness in view of the personal and social history of the minor whose transfer is being considered. As later established, a statutorily proper evaluation of a minor's history usually includes receipt and review of information about such factors as social adjustment, mental and physical health, school adjustment, adjustment in the family and familial support for any possible treatment or rehabilitation in addition to any previous involvement with the juvenile justice system. Similarly, the statute requires that the juvenile judge receive and evaluate information about the type of facilities available for the treatment or rehabilitation of the minor. Finally, the statute requires that the judge determine the likely effectiveness of these facilities in light of the history and present circumstances of the minor. Moreover, if information on these factors is not presented by the State or the minor's attorney or other representative, we read the transfer provision to authorize the juvenile judge to cause an investigation to be made into these factors. Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).

This court recently considered the adequacy of a transfer proceeding. In *People v. M.D.* (1984), 101 Ill. 2d 73, 83-84, the court stated that "[s]ection 2—7(3)(a) of the Juvenile Court Act [citation] *lists six factors which the trial court must consider* in reaching its decision on whether to prosecute a particular minor as an adult under the criminal laws." (Emphasis added.) The court then set forth the factors to be considered which, as already noted, include "the previous history of the minor" and "whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor." (Ill. Rev. Stat. 1983, ch. 37, pars. 702—7(3)(a)(4), (3)(a)(5).) In concluding that the transfer proceeding was adequate and that there was no abuse of discretion in ordering M.D.'s transfer, this court stressed

that ample testimonial and documentary evidence had been presented "in relation to each of the six factors the trial court was to consider." (101 Ill. 2d 73, 88.) Furthermore, this court has indicated that the mere recitation in the record that all statutory factors have been considered is not enough to affirm an order transferring a minor to criminal court. Rather, there must be sufficient evidence in the record as to each statutory factor to support the transfer order. Thus, in *People v. Taylor* (1979), 76 Ill. 2d 289, 300, the court affirmed a transfer order because "[t]he judge found sufficient evidence for a grand jury to return an indictment for the crimes charged, as well as evidence that the crimes were committed in an aggressive, premeditated and violent manner. He further took judicial notice of the juvenile court file showing that defendant had an extensive prior history of delinquency. Finally, he found, *based on expert testimony, that there were no juvenile facilities available for dealing adequately with one in defendant's situation* and that transfer was in the best interests of defendant and the People." (Emphasis added.)

We believe that *People v. M.D.* and *People v. Taylor* are controlling and require that the juvenile judge receive sufficient evidence on all statutory factors, including the minor's history and the availability of suitable treatment or rehabilitative services. Where the record fails to support the juvenile judge's recitation that all statutory factors were considered, there is an abuse of discretion.

The record in this case demonstrates that the juvenile judge gave virtually no consideration to the history of the defendant, to the existence of treatment or rehabilitative facilities, or to the amenability of the defendant to treatment or rehabilitation. Instead, the judge received information about three minor encounters with the juvenile authorities, only one of which was supported by

facts that the defendant engaged in criminal conduct. This incident concerned defendant's attempt, at age 10, to shoplift some toy cars. As to the second alleged encounter, a theft under $150, the judge was given no details by the State. As to the third alleged encounter, disorderly conduct, testimony by the State's witness established that the defendant was not involved in the incident but simply was present. As to the availability of treatment and rehabilitative services, the judge heard only the opinion of the chief juvenile probation officer of Macon County, who stated, in answer to a question by the assistant State's Attorney, that he was unaware of any facilities. No support was given for this opinion nor did the judge inquire about the basis for this view. This same juvenile officer also testified on direct examination that he felt that it was in the best interest of the defendant and society that he be transferred for trial under the Criminal Code, giving as his sole reason the "allegations against the minor." Here again, the judge did not seek to establish any other reasons in support of this view. This despite the fact that the juvenile officer testified on direct examination that he had not interviewed the defendant and, in answer to a question posed by defendant's mother, stated that he did not know the defendant and had not talked to him relative to the incidents giving rise to the transfer hearing. Finally, the judge did not extend his probe of these statutory factors even when defense counsel objected to the inadequate basis for the juvenile officer's opinions.

The transfer hearing held in this case is stark contrast to the extensive hearings generally held on the State's motion for transfer for trial under the Criminal Code. *People v. M.D.* (1984), 101 Ill. 2d 73, 76-83 (testimony and reports received from the public defender's investigator, the juvenile probation officer, a court psychologist, and a psychiatrist); *In re R.L.L.* (1982), 106 Ill.

App. 3d 209, 210-12 (testimony and reports received from supervisor of juvenile probation services of the Department of Children and Family Services regarding availability of treatment services, from Department of Children and Family Services regarding the juvenile's early life, from psychiatrists and psychologists); *People v. Thomas* (1981), 94 Ill. App. 3d 895, 896-97 (testimony and reports received from the juvenile probation officer, from the juvenile's teacher, both parents, and a court psychiatrist); *People v. Stocks* (1981), 93 Ill. App. 3d 439, 443-44 (testimony and reports received from the juvenile's counsellor, a juvenile probation officer, and the juvenile's mother); *People v. Liggett* (1980), 90 Ill. App. 3d 663, 665-67 (testimony and reports received from the juvenile probation officer, a clinical psychologist, and a psychiatrist); *In re Burns* (1978), 67 Ill. App. 3d 361, 365-70 (testimony and reports received from the juvenile probation officer, psychologist, and a psychiatrist); *People v. Underwood* (1977), 50 Ill. App. 3d 908, 910-11 ("The court considered a detailed survey of the defendant's social history which was compiled by the assistant director of court services[] *** [and] considered the adult and juvenile rehabilitation or treatment facilities available for the defendant and the benefit that might accrue if those facilities would be used in the instant case"), *modified on other grounds* (1978), 72 Ill. 2d 124.

Viewing the record of the transfer hearing in the instant case in its entirety in light of the language and purpose of the transfer provision and in light of *People v. M.D.* and *People v. Taylor, supra*, we conclude that defendant's transfer hearing was inadequate. In reaching this conclusion, we do not minimize the seriousness of the offenses for which defendant was charged and, after two trials, ultimately convicted. However, we are unable to ignore the fact that this defendant had no history of violent criminal conduct and, in fact, apparently had

virtually no criminal history whatsoever. Moreover, we cannot ignore the fact that the legislature has given certain protections to minors of the age of the defendant who are alleged to have committed serious offenses. It is our constitutional responsibility to insure that these protections are afforded by enforcing the language and spirit of the transfer provision. We hold therefore that defendant's transfer hearing was inadequate for a second reason: it did not comport with section 2—7(3) of the Act because of the failure to consider defendant's history, the availability of rehabilitative services, and defendant's amenability to those services found to exist.

For the reasons stated, we reverse the judgments of the appellate court and the circuit court, vacate the order entered by the juvenile judge of Macon County ordering defendant transferred for trial as an adult under the Criminal Code, and remand the cause for a new trial commencing with a transfer hearing to be conducted in conformity with the views expressed herein.

*Motion allowed;*
*judgments reversed;*
*order vacated;*
*cause remanded.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.

JUSTICE MILLER, concurring in part and dissenting in part:

I agree with the majority that a new transfer hearing should be conducted in this case. Nothing in the record indicates that the trial judge who presided at the original transfer hearing was aware that the defendant would have to be sentenced to a term of natural life imprisonment upon conviction of the charges here. That important information was necessary for the court and parties

to consider in determining whether the best interests of the defendant or of society warranted his prosecution under the Criminal Code of 1961 rather than under the Juvenile Court Act.

The majority opinion also holds that the transfer hearing was deficient in two additional respects: that the court failed to investigate the defendant's history, "especially as it related to his potential for rehabilitation," and that the court failed "to investigate the availability of rehabilitative services available for the defendant if he were retained under the jurisdiction of the Act." (119 Ill. 2d at 16.) I do not believe that the transfer hearing can be faulted on those grounds, and I do not join that part of the majority opinion.

The judge heard sufficient evidence regarding the defendant's personal history and potential for rehabilitation. All prior encounters with the police were disclosed, and the defendant's interview with the juvenile authorities, who inquired into his background, was entered in evidence. Also, the defendant's mother testified at the hearing. With respect to the availability of rehabilitative services, the chief juvenile probation officer of Macon County testified at the hearing, and he explained that he was not aware of any resources that would be suitable for the defendant. In reaching that conclusion, the probation officer indicated his knowledge of the criminal offenses with which the defendant could be charged if tried as an adult.

I would conclude that an adequate inquiry into those subjects was made at the transfer hearing, and I do not believe that due process required more. In *People v. Taylor* (1979), 76 Ill. 2d 289, 305, this court stated that the circumstances to be considered by a trial judge at a transfer hearing cannot be assigned rigid weights, nor can the decision be reduced to the certainty of a mathematical formula. Moreover, *Taylor* noted that " 'not all

of the relevant factors *** need be resolved against the juvenile to justify the waiver of jurisdiction.' " (*Taylor*, 76 Ill. 2d at 305.) Thus, the State does not have to prove that each relevant circumstance supports transfer; rather, one circumstance alone may be sufficient to compel that decision.

The defendant was charged with the brutal murder of an elderly couple, as well as with robbery, residential burglary, home invasion and aggravated criminal sexual assault. Any one of the charges alone could sustain a decision to transfer; in combination they would provide overwhelming support for that decision when balanced against the alternative of retaining the minor in the juvenile system until he attains the age of 21. It is not evident what further information, apart from that concerning the potential punishment for these offenses, could have been presented at the transfer hearing and would have outweighed the seriousness of these charges. Unlike the majority, then, I do not believe that we may seriously question either the adequacy of the information concerning the defendant's personal history, or the chief juvenile probation officer's opinion that there were no juvenile programs suitable for this defendant. In suggesting that further inquiry into those matters was necessary, the majority disregards *Taylor*'s analysis of the transfer provisions and slights the gravity of the crimes committed here. The significant inquiry in this case concerned the period of incarceration to which the defendant could be sentenced upon conviction. Because there is no indication in the record that the parties and the court were aware that a term of natural life imprisonment would be the required punishment upon a transfer and conviction of the murders, I agree with the majority that a new transfer hearing should be conducted here.