THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACK LANGSTON, JR., Defendant-Appellant.

Fifth District    No. 5—86—0472

Opinion filed April 14, 1988.—Rehearing denied May 13, 1988.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert Matoush, State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

On January 9, 1986, a petition for adjudication of wardship was filed in the circuit court of Marion County alleging that defendant, Jack Langston, Jr., committed the offense of attempted murder. After a hearing was conducted pursuant to section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)), the circuit court allowed the State to prosecute the defendant for this offense under the Criminal Code of 1961. At a subsequent stipulated bench trial, defendant was found guilty as charged. Defendant was thereafter sentenced to 12 years' imprisonment. The facts are as follows.

On January 7, 1986, at about 4:50 p.m. defendant's mother, Dorothy Littrell, entered the family home and walked toward defendant's bedroom. As she passed the bathroom she heard a gunshot and felt a pain in her right shoulder. Defendant appeared in the bathroom doorway, grinning. Mrs. Littrell fled to her bedroom and closed the door. She heard gunshots while en route to her bedroom and while in her bedroom. Defendant entered her bedroom with a rifle in his hands. Mrs. Littrell grabbed the barrel of the gun, causing defendant to let go. She then walked to a neighbor's house across the street, crying "[H]elp me, help me, my son Junior shot me."

On January 8, 1986, defendant, after being advised of his *Miranda* rights, agreed to give a statement to the police. In this statement, defendant, a 16-year-old high school sophomore enrolled in the special education program, revealed that he had contemplated killing his mother and stepfather for quite some time because they disciplined him unfairly. About one week before the shooting, he obtained ammunition which his stepfather had left in the yard and hid it in his room. On the day of the shooting he decided to kill his mother and stepfather, stuff their bodies into garbage bags, and bury them in the woods. In preparation, defendant loaded his stepfather's rifle with 10 bullets and took two trash bags and tape with him to the bathroom, where he sat on a chair with the rifle and waited for his mother.

When he saw her, he tried to shoot her in the head. A subsequent search of the house revealed two trash bags inside the bathroom and six empty shell casings inside the house.

On January 15, 1986, the State filed a motion to permit prosecution under the criminal laws pursuant to section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)). On January 23, 1986, a hearing was held on this motion at which Centralia Police Officer Jerry Edmonson and Ron Littrell, the defendant's stepfather, testified. Edmonson testified to the circumstances of the offense as related to him by the witnesses. Mr. Littrell testified that during the two years he had lived with defendant and defendant's mother he thought he and defendant had gotten along "fairly well," even though Mr. Littrell spanked defendant on occasion for misbehavior. Mr. Littrell further testified that defendant's only prior contact with the police was in September 1985 when defendant and another boy stole a stereo from a neighbor's house. According to Mr. Littrell, defendant was still "grounded" for this misbehavior at the time of the shooting. Mr. Littrell stated that defendant would not be allowed to stay in the family home again and that defendant's incarceration is necessary to protect the public and the family from further violence. It was also established at this hearing that defendant's natural father was serving a 15-year prison term for attempted murder.

Without benefit of a social history investigation, a psychiatric evaluation, or testimony as to the existence of treatment or rehabilitative facilities, the trial court ruled that defendant should stand trial as an adult. At the subsequently held bench trial, both sides agreed that the evidence would include the testimony of Mrs. Littrell, the neighbors who saw Mrs. Littrell after the shooting, and the police officers who investigated the shooting and took defendant's statement. On the basis of this evidence, the trial court found defendant guilty as charged.

On appeal defendant contends: (1) that the trial court erred in failing to order a social and psychiatric investigation of defendant prior to ruling that defendant could stand trial as an adult; (2) that the trial court considered improper criteria in ruling that defendant could stand trial as an adult; and (3) alternatively, that the defendant's sentence is excessive.

Section 2—7(3) of the Juvenile Court Act provides in pertinent part:

> "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile

Judge *** after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3).

Section 2—7(3) closely parallels the transfer provisions contained in the District of Columbia Juvenile Court Act as interpreted by the United States Supreme Court in *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045. (See Ill. Ann. Stat., ch. 37, par. 702—7, Council Commentary, at 84 (Smith-Hurd 1987 Supp.); see also *People v. Taylor* (1979), 76 Ill. 2d 289, 299, 391 N.E.2d 366, 370.) In *Kent*, the court recognized that since the decision as to whether a juvenile should be transferred to an adult court for purposes of criminal prosecution is of critical importance, the juvenile must be afforded certain procedural due process rights, including the right to a hearing, the right to counsel, and the right to a statement by the court of the basis upon which the decision was made. Additionally, the *Kent* court set forth criteria which a judge must consider prior to ordering a transfer. These criteria are reflected in section 2—7(3)(a) of our Juvenile Court Act. In making a transfer determination, a juvenile judge must weigh relevant statutory and nonstatutory factors in striking the balance for society by transferring the juvenile or in striking the balance for the juvenile by retaining jurisdiction. *People v. Clark* (1987), 119 Ill. 2d 1, 14, 518 N.E.2d 138, 144.

In *People v. Clark*, a 14-year-old juvenile was charged, *inter alia*, with the murder of two persons. The minor was subsequently transferred to adult court, where he was convicted and sentenced to natural life imprisonment. The minor appealed, contending, *inter alia*, that the facts introduced at the transfer hearing were insufficient to

support a transfer. At the minor's transfer hearing the State introduced evidence which would support an indictment, evidence which showed the alleged offenses were committed in an aggressive and premeditated manner, and evidence fixing the age of the juvenile at the time of the offenses. As to the minor's history, the State introduced evidence that prior to the alleged offenses the minor had had three station adjustments (attempted theft, theft, and disorderly conduct) and had been named in a juvenile petition alleging burglary nine days prior to the commission of the alleged offenses. As to whether there were facilities particularly available to the juvenile court for the treatment and rehabilitation of the minor, the State introduced the testimony of a probation officer who stated, without giving reasons or interviewing the juvenile, (1) that he was unaware of any facilities available in Illinois for the juvenile's rehabilitation and treatment, and (2) that the best interests of the juvenile and society required the juvenile's incarceration beyond age 21. At no point during the transfer hearing did anyone mention the fact that an adult conviction for the murder of two persons requires a minimum sentence of natural life imprisonment. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c).

Our supreme court reversed the juvenile's convictions on the ground that the trial court's unawareness of the possible severe minimum sentence resulted in an improper balancing of the best interests of the minor and the security of the public. (*Clark,* 119 Ill. 2d at 16, 518 N.E.2d at 144.) However, the court also concluded that the transfer determination could be reversed on two other grounds; namely, that the evidence presented as to the juvenile's history and the availability of facilities for treatment and rehabilitation of the juvenile was inadequate to support a transfer. (119 Ill. 2d at 16, 518 N.E.2d at 145.) In so concluding, the court noted that the evidence did not comport with the following guidelines: (1) that a statutorily proper evaluation of a minor's history usually includes receipt and review of information about such factors as social adjustments, mental and physical health, school adjustment, adjustment in the family and familial support for any possible treatment or rehabilitation in addition to any previous involvement with the juvenile justice system; and (2) that the statute requires that the juvenile judge receive and evaluate information about the type of facilities available for the treatment or rehabilitation of the minor and that he determine the likely effectiveness of these facilities in light of the history and present circumstances of the minor. 119 Ill. 2d at 17, 518 N.E.2d at 145.

■ The statement taken from defendant shortly after his arrest tended to show that he had shot his mother with the intent to kill and

that he had planned to kill both his mother and stepfather for at least one week prior to the shooting. At the transfer hearing, the defendant's stepfather testified that defendant, a 16-year-old high school sophomore enrolled in the special education program, had had one prior contact with the police less than one year prior to the shooting. This contact resulted in the defendant being "grounded." Defendant's stepfather further testified that although he had gotten along fairly well with defendant prior to the shooting, defendant would not be allowed to return home. It was his opinion that defendant's incarceration was necessary to protect the public and the family from further violence. Although this testimony established (1) lack of family adjustment, (2) lack of family support for treatment or rehabilitation efforts, and (3) that defendant had one minor station adjustment prior to the alleged offense, it did not establish defendant's social adjustment, school adjustment, or mental and physical health. Consequently, the evidence as to defendant's history was inadequate to support a transfer determination. Furthermore, as there was no evidence whatsoever regarding the facilities available to the juvenile court for defendant's treatment or rehabilitation, the evidence as to this factor was also inadequate to support a transfer determination. In light of our conclusions, we need not discuss the merits of the sentencing issue.

For the foregoing reasons, the judgment of the circuit court must be reversed. Furthermore, the order transferring defendant for trial as an adult under the criminal code is vacated. We remand this cause for a new trial commencing with a transfer hearing to be conducted in conformity with the views expressed herein.

Reversed; vacated; and remanded with directions.

HARRISON, P.J., and LEWIS, J., concur.