THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN CLARK BRIDGES, Defendant-Appellant.

Fifth District   No. 5—87—0608

Opinion filed September 27, 1989.

962

Charles M. Schiedel and James E. Chadd, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:
After a jury trial, defendant, John Clark Bridges, was found guilty of two counts of aggravated battery. One count was based on the victim's status as a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)). The other count was based on the fact that defendant had caused great bodily harm to the victim (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). Defendant was sentenced to five years on each count.

The sentences were to run concurrently, but consecutive to defendant's prior juvenile disposition. In this cause, defendant raises the following issues: (1) whether defendant was improperly transferred from juvenile to criminal court; (2) whether defendant was improperly convicted for two counts of aggravated battery; and (3) whether defendant's felony sentence can be made consecutive to his term of imprisonment under his juvenile disposition. We affirm in part and vacate in part.

At the time of the instant offense, defendant was 16 years old and was awaiting being sent to the Juvenile Department of Corrections at Joliet. Defendant had previously been tried as an adult for murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) but was not convicted of that crime. Defendant had instead been convicted of attempted murder, voluntary manslaughter, aggravated battery, and unlawful use of weapons. However, the State had not moved to have defendant tried as an adult, but rather had relied on section 2—7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a)), which provides that the definition of a delinquent minor does not apply to a minor of at least 15 years of age who is charged with murder. After defendant's acquittal on the murder charge and convictions on four other charges, a dispositional order was entered pursuant to the Juvenile Court Act which committed defendant to the Juvenile Division of the Department of Corrections until age 21.

Prior to dispositional hearing, on November 28, 1986, at approximately 4:30 p.m., defendant was in the juvenile facility at the Williamson County jail. One other juvenile, William Hale, was also in this facility. The two juveniles had neither been allowed to take showers that day nor had they been allowed to make telephone calls. Defendant and Hale wanted to talk to a juvenile officer concerning the lack of shower and telephone use, but were told that none were available. In response to this treatment, Hale jammed the lock on the outside door to the juvenile area with a toothbrush. One of the guards was drawn to this area when she noticed cookies scattered about the floor. She assumed something was wrong and immediately solicited the aid of three other officers. The four officers entered the juvenile area after forcing the door open. The officers proceeded to tell the juveniles to return to their cells. The juveniles refused. Two other officers were called to assist. When there was still no movement by the juveniles, the officers equipped themselves with night sticks. There was then what was described as a "Mexican standoff." Finally, Deputy Ronald McDonald entered the area with a riot stick, which was described as three feet in length, approximately two inches wide. When McDonald

entered the room, he was then face to face with defendant. As Mc-Donald turned to say something to the other officers, he was hit on the left cheek by defendant.

McDonald and the other officers agreed that McDonald did not hit defendant nor did he make any movement with the riot stick or his hands that could have been construed as an attack. Defendant admitted hitting McDonald, but argued that he did so only in self-defense. Defendant further admitted McDonald did not hit or touch him first, but defendant was reacting to what he thought was going to be a blow. Witness Hale testified that McDonald punched defendant in the stomach with the night stick and only then did defendant punch McDonald. Defendant was ultimately restrained and both juveniles returned to their cells.

McDonald's treating physician testified that McDonald suffered a fractured left cheekbone. Blood was found behind McDonald's ear, which was an indication that he may have suffered a broken skull. In order to confirm or deny this, McDonald was sent to Evansville, Indiana, for further examination by a neurosurgeon. There it was determined that there was no skull fracture. McDonald was off work for approximately three months due to his injuries. He stated he still suffers some slight hearing loss in his left ear, sinus problems, nerve damage in his face, and had to undergo an operation to repair a damaged eye socket.

After this incident, the State moved to have defendant transferred to adult court. The State's motion was granted, and defendant was ultimately convicted of two counts of aggravated battery.

The first issue defendant raises on appeal is whether he was improperly transferred from juvenile court to criminal court. He argues that he was improperly transferred because the trial court failed to give proper consideration to his personal history and background and failed to evaluate and consider the availability of other juvenile facilities. The State responds that the record supports the trial court's determination to transfer defendant's case to criminal court. We agree.

■ The procedures governing a transfer hearing and the criteria to be considered are controlled by section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a)), which provides, in pertinent part:

"(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was com-

mitted in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

This statute is rooted in the constitutional requirement of procedural due process as stated by the Supreme Court in *Kent v. United States* (1966), 383 U.S. 541, 577, 16 L. Ed. 2d 84, 95, 86 S. Ct. 1045, 1055. However, the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion that in light of the statutorily prescribed criteria, transfer is warranted. (*People v. Taylor* (1979), 76 Ill. 2d 289, 303-04, 391 N.E.2d 366, 372.) With this in mind, we turn next to an examination of the transfer hearing held in this case.

The State first called circuit judge Thomas Haney, who was the presiding judge at defendant's first appearance on this matter when defendant was still in juvenile court. Judge Haney testified that near the end of the hearing when he was explaining defendant's rights, defendant said to the judge, "Why don't you go fuck off *** Why don't you go screw something?" The State then called Delores Hull, a Saline County probation officer who interviewed defendant in connection with the 1986 murder charge. Ms. Hull had been a probation officer since 1981. She testified concerning her familiarity with placement of juveniles in appropriate facilities. Based on defendant's psychological report, which found defendant to be overly aggressive, it was Ms. Hull's opinion that there would be no appropriate facility for defendant. She did not specifically check with placement facilities concerning defendant, but was relying on her past experiences with similarly situated juveniles who had always been turned down in the past.

Two Harrisburg police officers testified about a meeting they had with defendant on December 18, 1984. On that date, defendant's father had called them to his residence concerning defendant's state of mind. Defendant's father told the police officers that he was worried about his son because his son had no feelings and did not care about anyone. During discussions with defendant on that date, defendant told the officers that he wanted to kill someone just to see how it felt.

The State also called four witnesses, including defendant, to the aggravated battery which occurred at the Williamson County jail. All related virtually the same facts that were set out at the beginning of our opinion.

The State's final witness was defendant's father. He testified that he would rather see his son at the adult facility in Menard rather than at the juvenile facility in Joliet. This desire was based in part on the fact that he believed defendant had not made any progress at Joliet, but rather that his son had been "messed over up here in Joliet." His desire to have his son at Menard was also based on geographical considerations, as he lived in Southern Illinois, approximately five hours from Joliet.

The State also introduced into evidence a certified copy of defendant's conviction in case number 85—J—29 in Saline County, which included a copy of the record sheet of petition to transfer from juvenile division to criminal division and a psychological report completed in connection with the murder case. A transcript by the court reporter of the December 3, 1986, dispositional hearing involving defendant was also introduced.

■■ ■ The purpose of any transfer hearing is to "balance the best interests of the alleged juvenile offender, particularly as these interests relate to his or her potential for rehabilitation, against society's legitimate interest in being protected from criminal victimization perpetrated by minors." (*People v. Clark* (1987), 119 Ill. 2d 1, 12, 518 N.E.2d 138, 143.) On review, the appellate court's role is to determine whether, in light of the statutory criteria, the trial judge abused his discretion. (*People v. Thomas* (1981), 94 Ill. App. 3d 895, 419 N.E.2d 480.) No one criterion is determinative, nor is equal weight necessarily given to every criterion. What is required is preservation of the record to allow meaningful review of the trial court's exercise of discretion. *People v. Taylor* (1979), 76 Ill. 2d 289, 303-04, 391 N.E.2d 366, 376; *People v. Kraman* (1981), 96 Ill. App. 3d 390, 404, 421 N.E.2d 346, 357.

In the instant case, defendant does not contest the court's finding with respect to the first three criteria. There was evidence not only to support an indictment, but also to find defendant guilty beyond a reasonable doubt. The evidence showed that defendant struck the victim while defendant was looking away. It was best described as a "sucker punch." Defendant's stance throughout his encounter with the officers was aggressive. The blow was definitely premeditated and calculated. Regarding the third criterion, defendant's age, defendant was 16 at the time of the occurrence on November 28, 1986, but turned 17 on December 7, 1986. Had the crime occurred two weeks later, defendant would have been an adult. We move now to the contested criteria.

The fourth criterion, the minor's history, usually includes review of information concerning such factors as social adjustment, mental

and psychological health, school adjustment, adjustment in the family, familial support for any possible treatment or rehabilitation, and any previous involvement in the juvenile system. (*People v. Clark* (1987), 119 Ill. 2d 1, 17, 518 N.E.2d 138, 145.) A review of the record indicates that defendant's social adjustment is lacking indeed. The psychological reports state that defendant has no friends. The only people that he has any feelings for at all are his father, whom he loves, and his mother, whom he hates. Defendant's father had been concerned by defendant's lack of feelings for others as evidenced by his calling the Harrisburg police department requesting assistance with his son in 1984. Two psychologists stated that defendant only tolerates his stepmother in deference to his father. The record also indicates that defendant has a long history of violent and hostile behavior. The psychological report includes statements from defendant's mother that her son has been involved in a number of fights since grade school. When defendant was only 12, he threatened his mother with a knife, telling her that he would kill her if she attempted to maintain custody of him after his parents' divorce. When defendant was 15, he told two Harrisburg police officers that he would like to kill someone just to see what it was like. When defendant was 16, he did kill someone and was convicted of attempted murder and voluntary manslaughter. It was while defendant was incarcerated for these offenses that he attacked Deputy McDonald.

Defendant clearly has no respect for the court system, as evidenced by the remarks he made to Judge Haney during his first appearance on the aggravated battery charges. Furthermore, all psychological reports and all transcripts evidence that both defendant and his father have an "us against the world mentality." At least two psychologists believe that defendant's father is a highly suspicious and potentially violent man and that defendant has taken on these same characteristics.

Defendant's school adjustment is also lacking. Defendant dropped out of high school in the tenth grade. He has taken GED classes while incarcerated, and at the time of sentencing hearing, defendant expected to complete that course within a few months.

Defendant argued that the psychological reports filed in conjunction were too dated to be beneficial. One psychological evaluation was conducted on August 14, 1985, and the other was dated August 11, 1986. Defendant argues that the interval between these reports and the sentencing hearing constitute an enormous time in the life of a minor and that positive changes could have been made in his life. While this is possible, we see no such indication, as clearly evidenced

by defendant's attitude toward the court at his first appearance, his fighting while incarcerated, as well as his father's paranoid statements to the court. This combination indicates that nothing has changed from the time the psychological reports were initially made. In support of this finding we note that there is on file a report from defendant's correctional counselor at Joliet, which was completed on February 5, 1987. This report indicates that defendant has continued his aggressive behavior by fighting with other juveniles.

We do agree that the fifth factor, the availability of facilities for defendant's treatment and rehabilitation, was not given a great deal of consideration. We cannot say, however, that the trial court abused its discretion in this regard. The probation officer made it clear that no facility of which she was aware and which the county could afford would be willing to accept defendant due to his aggressive and violent behavior. Indeed, it is quite possible that after defendant's stay in the Juvenile Department of Corrections on his earlier charges, it would be difficult to find a facility that would be willing to take him.

■ As to the sixth criterion, the record clearly supported the trial court's finding that the public's need for security in this instance outweighed the interest of defendant. Overall, the record supports the trial court's determination to transfer defendant's case to criminal court. There was sufficient information on each of the six points found in section 2—7(3)(a) of the Juvenile Court Act. Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a).

■ We move now to the second issue, whether defendant was improperly convicted and sentenced for two counts of aggravated battery. Defendant argues that the two convictions and sentences were improper in the present case because the evidence revealed only one act of striking the victim. While there was some evidence that defendant continued fighting with the victim after the initial blow, the occurrence was all part of a single action, and therefore, one of the aggravated battery convictions must be vacated. We agree.

In this cause, defendant was charged with two separate counts of aggravated battery. The aggravating factor in count I was the causation of great bodily harm; in count II, it was the victim's status as a police officer. We find the instant case analogous to *People v. Ellis* (1986), 143 Ill. App. 3d 892, 493 N.E.2d 739, wherein the defendant was charged with one count of aggravated battery based on great bodily harm, and a second count based on a public place of accommodation. In *Ellis*, the State argued that there were separate physical acts because the defendant struck the victim on the back of the head and then struck her in the face when she turned to face him. This

court reversed defendant's conviction and held, first, that the defendant's conduct could not be broken into separate acts and, second, that the defendant's conviction based on a public place must also be reversed. "The fact that this act occurred in a public place of accommodation does not belie the fact that a single offense of aggravated battery was committed." (143 Ill. App. 3d at 897, 493 N.E.2d at 743.) Likewise, in the instant case, one act of aggravated battery was committed, and the status of the victim, a police officer, will not allow two convictions to stand.

The State argued that this case was similar to *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535, in which the supreme court upheld convictions for both attempted murder and armed violence based upon the defendant's act of cutting the victim's throat with a knife. In *Myers*, the defendant pressed a knife to the victim's throat, withdrew the knife momentarily to threaten someone else, and then returned the knife to the victim's throat. The *Myers* court found that each of these two movements amounted to "an overt or outward manifestation sufficient to support a different offense." (85 Ill. 2d at 288, 426 N.E.2d at 538.) We find the State's reliance on *Myers* to be misplaced, as we are able to distinguish these two cases on facts alone. The *Myers* court relied on the existence of an intervening event, the defendant's threatening another victim, in order to support both convictions. In the present case, there was no such intervening event. All blows were struck in rapid succession. We, therefore, vacate defendant's conviction for aggravated battery based upon the victim's status as a police officer and affirm the other conviction based upon injury. We do not, however, agree with defendant that this cause needs to be remanded for resentencing.

■ A cause need not be remanded for resentencing where there is no indication that the sentencing court improperly considered the vacated conviction. (*People v. Wilson* (1981), 93 Ill. App. 3d 395, 417 N.E.2d 146.) In the instant case, defendant was sentenced to five years on each charge, the sentences to run concurrently. There is nothing in the record to indicate defendant's sentence would have been less severe had defendant been convicted of only one charge. The record reflects that the trial judge was concerned with defendant's history of violence and the fact that the victim was seriously injured, not the fact that defendant had two separate convictions. Accordingly, we find no need to remand this cause for resentencing on the one aggravated battery conviction. We affirm the five-year sentence.

■■ ■ This leads to the final issue, whether the trial court erred

by imposing a consecutive sentence. Defendant argues that a felony sentence cannot be made consecutive to defendant's term of confinement under a juvenile disposition. Defendant further argues that all statutory provisions defining situations where consecutive sentences may be imposed require that a defendant must have more than one criminal conviction and sentence. Because adjudications of delinquency under the Juvenile Court Act are not criminal proceedings (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024; *In re B.S.* (1979), 73 Ill. App. 3d 507, 392 N.E.2d 62), there can be no consecutive sentence imposed in the instant case. We disagree.

In the instant case, the aggravated battery sentence was made consecutive to defendant's term of confinement in the Juvenile Department of Corrections. What is controlling is the underlying basis of defendant's sentence to the Juvenile Department of Corrections. (See *People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200.) Here, the underlying basis is defendant's felony convictions for attempted murder and voluntary manslaughter, not defendant's adjudication as a delinquent.

Defendant makes an additional argument that a juvenile disposition cannot be made part of a consecutive sentence because section 5—8—4(e)(4) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(e)(4)) states that day-for-day good conduct credit shall apply to the aggregate term of a consecutive sentence and such credit cannot apply to commitments under the Juvenile Court Act because of their indeterminate nature.

As prescribed by the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(a)), it is generally within the discretion of the trial court to determine whether multiple terms of imprisonment are to be served concurrently or consecutively. This discretion is, however, qualified by limitations set forth in the Code. Defendant constructs an interesting argument, but we decline to follow such reasoning, as we do not believe the General Assembly intended to make all such sentences run concurrent with a juvenile disposition. To follow defendant's argument would be to allow juvenile offenders to commit serious crimes while serving out their commitment to the Juvenile Department of Corrections without fear of serious consequences in adult court.

We find the instant problem analogous to cases where defendants are serving Federal determinate sentences which do not have minimum or maximum terms. In *People v. Boney* (1970), 128 Ill. App. 2d 170, 262 N.E.2d 766, it was held that Illinois did not relinquish jurisdiction of the defendant when it turned him over to Federal authori-

ties, as a detainer was placed with the Federal penitentiary to hold the defendant for return to Illinois upon conclusion of the defendant's Federal sentence in order that he might serve his State sentence. Likewise, we hold that defendant must complete his disposition in the Juvenile Department of Corrections where day-for-day good conduct credit cannot be calculated. Upon release, defendant will serve his five-year sentence on the aggravated battery charge, and at that time, day-for-day good conduct credit shall apply.

For the foregoing reasons, this court affirms in part and vacates in part the order of the circuit court of Williamson County.

Affirmed in part; vacated in part.

WELCH, P.J., and RARICK, J., concur.