# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Moore, 2011 IL App (3d) 090993**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEONTE MOORE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-09-0993 |
| Filed<br>Modified upon denial<br>of rehearing | September 2, 2011<br><br>October 6, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 13-year-old defendant's conviction as an adult for armed robbery was reversed and the trial court's order transferring him to criminal court was vacated where the trial court entered the transfer order without considering the availability and advantages of treatment services in the juvenile system, whether defendant possessed a deadly weapon, and the potential term of defendant's sentence as an adult, and the cause was remanded to juvenile court for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 09-CF-497; the Hon. Chris L. Frederickson and the Hon. James E. Shadid, Judges, presiding. |
| Judgment | Reversed and vacated; cause remanded with directions. |

| Counsel on Appeal | Thomas A. Karalis (argued), of State Appellate Defender's Office, of Ottawa, for appellant. |
| | |
| | Kevin W. Lyons, State's Attorney, of Peoria (Terry A. Mertel and Mark A. Austill (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice Carter and Justice Wright concurred in the judgment and opinion. |

## OPINION

¶ 1 Defendant, 13-year-old Deonte Moore, was convicted of armed robbery under the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/18-2(a)(2) (West 2008)) and sentenced to 21 years in prison. On appeal, he claims that (1) the trial court erred in transferring him to criminal court to be tried as an adult, and (2) the application of the mandatory 15-year gun enhancement to his 6-year sentence violates the federal and state constitutions. We vacate the decision to transfer defendant and remand to juvenile court for further proceedings.

¶ 2 On April 14, 2009, defendant was charged by juvenile petition with armed robbery of a bank in Peoria. In the petition, the State alleged that defendant:

"committed the offense of armed robbery in violation of 720 ILCS 5/18-2(A), in that said minor, while armed with a dangerous weapon, a firearm, knowingly took property, being United States currency."

¶ 3 Three days later, the State filed a motion to transfer, seeking to remove the cause from juvenile court and try defendant as an adult. At the hearing, the State introduced a copy of defendant's birth certificate, crime scene photographs, the handgun, and the bank security video. The trial court also took judicial notice of juvenile case No. 07-DJ-495 in which defendant choked his grandmother and was adjudicated a delinquent for domestic battery. The file indicated that defendant had been placed on probation for that offense and that he failed to keep his appointments with his probation officer.

¶ 4 The State presented testimony from the officers involved in the armed robbery incident. Their testimony revealed that defendant approached the bank alone and on foot. He pulled his sweatshirt hood over his head and placed a red bandana over his face. He then entered the bank while carrying a .22-caliber handgun, pointed the gun at a nearby teller and demanded money. The teller froze and was unable to respond to his orders. He asked her if she thought it was a joke and then approached another teller. With the gun raised to the

teller's face, defendant told her to put all the money in her drawer in a pillow case that he had placed on the counter. She put the money, along with several premarked bills and an exploding dye pack, into the bag. Defendant then thanked the teller and left the bank.

¶ 5        Officers testified that they pursued defendant, chasing him down several streets, until they found him hiding behind a couch in a residential garage. Defendant had red dye all over his sweatshirt. During his apprehension, defendant told the officers that the gun he used was a BB gun. He later told them that the handgun was real but that he did not think it was loaded.

¶ 6        Following his arrest, defendant admitted that he robbed the bank using a small black handgun. Detective Jim Turner testified that during his interview, defendant stated that he checked the magazine of the handgun and thought it was empty, but that there may have been a bullet in the chamber. Defendant told Turner that when the dye pack exploded, he thought he had shot himself. Defendant said that he robbed the bank because he had run away from home and needed money for food and clothes and a haircut. He then told the detective that he threw the gun in a window well as he was fleeing the scene.

¶ 7        Officer Douglas Hopwood testified that he and other officers recovered the handgun and the pillow case from the window well. The magazine of the gun was empty, and it was not loaded.

¶ 8        Defendant's mother, Juanita Moore, testified that she had difficulty enforcing rules with her son. If he disagreed with her, he would just run away. Defendant ran away from home a few days before the robbery. She believed that defendant was living with someone named Tyrone and that it was Tyrone's idea to rob the bank. She testified that defendant has been diagnosed with attention deficit hyperactivity disorder but did not take medication for his condition. She further testified that defendant had drug and alcohol issues and had started, but failed to complete, anger management classes. According to her testimony, defendant had never had a full psychological evaluation, nor had he attended special education classes or professional counseling sessions.

¶ 9        In defense counsel's closing argument, he stated:

> "If this were to be transferred, my client is looking at a minimum of several years in the Department of Corrections, especially if the State would seek to enhance this. If this stays in juvenile court, there is [*sic*], as I previously stated, your Honor, several services and facilities for which my client could be punished and rehabilitated."

¶ 10       The juvenile judge considered the factors under the discretionary transfer provision of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-805(3)(b) (West 2008)) and orally pronounced his findings. Regarding the advantages and treatment options within each system, the court stated, "I have considered the advantages and treatment within the juvenile justice system. There are facilities available where minors can be treated." The court then noted defendant's failure to attend probation meetings. As a result, the court determined that defendant would be unwilling to cooperate on juvenile probation. The court found probable cause to believe that the allegations in the petition were true and that it was in the best interests of the public to proceed under the Criminal Code. The court then granted the State's motion to transfer.

¶ 11        The State filed a superceding bill of indictment charging defendant as an adult. The indictment provided:

> "[Defendant], a person under 15 years of age while armed with a dangerous weapon, a firearm, did take property being United States currency from the person or presence of Kathleen Sayers by threatening the imminent use of force."

¶ 12        Prior to trial, defense counsel moved to vacate the order transferring the cause to criminal court. At the hearing, the State noted that, if convicted, defendant could be sentenced to a range of 6 to 30 years in prison for a Class X felony. The trial court concluded that the transfer order was not an abuse of discretion and denied defendant's motion.

¶ 13        Defendant waived his right to a jury trial, and the cause proceeded to a bench trial. According to the stipulated evidence recited by the State, a bank teller at South Side Trust & Savings Bank would testify that she was working on April 13, 2009. On that day, a young male wearing a black, hooded sweatshirt and black jeans with a red bandana covering his face entered the bank with a handgun and demanded money from the teller working next to her. When that teller froze, he moved over to her and demanded that she place all her money in a pillow case. She took the pillow case and filled it with money that had been prerecorded and a dye pack. The masked man then thanked her for her cooperation and quickly left the bank.

¶ 14        Several officers' proposed testimony would include statements that defendant was found hiding behind a couch in a residential garage not far from the bank. His clothing was stained red. The officers recovered a .22-caliber semiautomatic handgun from the window well and removed an unloaded magazine from it. In his statement, defendant admitted that he committed the robbery using a handgun that he believed was not loaded. He told the officer that he did not intend to hurt anyone.

¶ 15        The trial court found defendant guilty of armed robbery as charged. The court also found that the aggravating factor of armed with a firearm was proven beyond a reasonable doubt.

¶ 16        At sentencing, the State advised the court that defendant's use of a gun to commit the crime required the application of the 15-year enhancement provision; thus, defendant could not be sentenced to less than 21 years in prison. The State recommended that the minimum sentence be imposed. Defense counsel argued that the 15-year enhancement was unconstitutional due to defendant's young age. The trial court sentenced defendant to the minimum term of 6 years plus the 15-year enhancement.

¶ 17        Defendant first argues that the trial court erred in granting the State's motion to transfer him to criminal court because it failed to consider evidence in support of every factor under the discretionary transfer statute.

¶ 18        In Illinois, a 13-year-old minor may be prosecuted as an adult under the criminal laws of the State if a juvenile court determines, in its discretion, that there is probable cause to believe the allegations in a transfer motion are true and it is not in the best interests of the public to proceed under the Act. 705 ILCS 405/5-805(3)(a) (West 2008). In determining whether to transfer a juvenile, the court must consider, among other things,

> "(i) the age of the minor;

(ii) the history of the minor, including:

(A) any previous delinquent or criminal history of the minor,

(B) any previous abuse or neglect history of the minor, and

(C) any mental health, physical, or educational history of the minor or combination of these factors;

(iii) the circumstances of the offense, including:

(A) the seriousness of the offense,

(B) whether the minor is charged through accountability,

(C) whether there is evidence the offense was committed in an aggressive and premeditated manner,

(D) whether there is evidence the offense caused serious bodily harm,

(E) whether there is evidence the minor possessed a deadly weapon;

(iv) the advantages of treatment within the juvenile justice system including whether there are facilities or programs, or both, particularly available in the juvenile system;

(v) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections:

(A) the minor's history of services, including the minor's willingness to participate meaningfully in available services;

(B) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;

(C) the adequacy of the punishment or services." 705 ILCS 405/5-805(3)(b) (West 2008).

¶ 19    The purpose of a transfer proceeding is to balance the best interests of the juvenile offender, particularly as his interests relate to his potential for rehabilitation, against the public's interest in being protected from crime. *People v. Morgan*, 197 Ill. 2d 404 (2001); *People v. Clark*, 119 Ill. 2d 1 (1987). The history of the transfer statute makes clear that a juvenile judge in a transfer proceeding must weigh relevant statutory and nonstatutory factors in striking the balance for society by transferring the alleged juvenile offender or in striking the balance for the minor by retaining jurisdiction. *Clark*, 119 Ill. 2d at 12.

¶ 20    To that extent, a juvenile judge must receive and consider evidence as to each statutory factor. *Clark*, 119 Ill. 2d at 18. A juvenile judge must evaluate information concerning the type of facilities available for the treatment or rehabilitation of the minor and must evaluate the likely effectiveness of those facilities in light of the history and present circumstances of the minor. *Morgan*, 197 Ill. 2d at 428-29. A juvenile judge should also consider critical nonstatutory elements such as the resulting sentence if the minor is convicted under the Criminal Code. *Clark*, 119 Ill. 2d at 14. A harsh penalty that is mandated upon conviction is a factor to be weighed in determining whether the best interest of the minor and " 'the security of the public' " may require that the minor continue in custody or under supervision for a period extending beyond his minority. *Id.* at 15. Adequate balancing under the statute

requires consideration of which penalty would best serve both interests at stake. *Id.*

¶ 21    The decision to permit prosecution of a juvenile under the criminal law is a matter of judicial discretion, although that discretion is limited and controlled by the Act. See 705 ILCS 405/1-1 *et seq.* (West 2008). To affirm an order transferring a minor to criminal court, this court must determine if there was sufficient evidence in the record as to each statutory factor to support the transfer order. *Morgan*, 197 Ill. 2d at 428. The mere recitation in the record that all statutory factors have been considered is not enough to affirm a discretionary transfer order. *Clark*, 119 Ill. 2d at 18.

¶ 22    Here, the trial court did not adequately address two statutory transfer factors and one nonstatutory factor. First, no evidence was presented at the transfer hearing regarding the availability and advantages of treatment services in the juvenile system. 705 ILCS 405/5-805(3)(b)(iv) (West 2008). The State presented defendant's file in his prior juvenile case, which discussed the services defendant received while on probation in the domestic abuse case. However, a review of the broad services available to defendant for the instant offense was not presented to the trial court. The State failed to present any testimony as to the types of facilities available for defendant's treatment or rehabilitation in juvenile detention as compared to the adult division of the Department of Corrections. Moreover, the juvenile judge did not consider any evidence regarding the adequacy of those services, or the punishment. The court relied on defendant's noncompliance while on probation but failed to consider defendant's potential for rehabilitation by participating in mandatory services in juvenile detention.

¶ 23    Second, the evidence presented at the transfer hearing failed to establish that defendant possessed a deadly weapon, a factor that must be considered under the juvenile transfer statute. 705 ILCS 405/5-805(3)(b)(iii)(E) (West 2008). The transfer statute does not define a "deadly weapon." However, for purposes of armed robbery, the State may prove that a handgun is a dangerous (or deadly) weapon by presenting evidence that the gun was loaded and operable, or by demonstrating that it was used or capable of being used in a dangerous manner, such as a bludgeon or club. *People v. Ross*, 229 Ill. 2d 255, 276 (2008); *People v. Skelton*, 83 Ill. 2d 58 (1980). The trial court's finding that a gun is a dangerous weapon should be based on the objective nature of the gun, rather than the subjective feelings of the victim. *Ross*, 229 Ill. 2d at 277.

¶ 24    In this case, the evidence did not show that defendant used a dangerous or deadly weapon. The State failed to present any evidence that the gun was loaded. Defendant told Detective Turner that he did not think the gun was loaded. The officers who recovered the weapon found that the magazine was empty and verified that the gun was inoperable. Moreover, the State failed to demonstrate that defendant used or attempted to use the gun as a bludgeon or other deadly instrument. See *Ross*, 229 Ill. 2d at 273-76. Thus, based on the stipulated evidence presented at the transfer hearing, the trial court erred in finding that defendant "possessed a deadly weapon." See 705 ILCS 405/5-805(3)(b)(iii)(E) (West 2008).

¶ 25    In relying on *Ross*, we note that the discussion in that case is based on the 1998 version of the armed robbery statute. See 720 ILCS 18-2(a) (West 1998) (defendant commits armed robbery when he or she is "otherwise armed with a dangerous weapon"). In 2000, the

legislature amended the armed robbery statute. Under the current version, section 18-2(a)(1) requires proof that the accused was "armed with a dangerous weapon," and section 18-2(a)(2) requires proof that the accused was "armed with a firearm." See Pub. Act 91-404, § 5 (eff. Jan.1, 2000) (amending 720 ILCS 5/18-2 (West 1998)). Thus, under section 18-2(a)(2) of the armed robbery statute, whether a firearm is loaded or unloaded is immaterial, and the *Ross* analysis no longer applies.

¶ 26    However, the juvenile transfer statute still requires the circuit court to evaluate "whether there is evidence the minor possessed a deadly weapon." 705 ILCS 405/5-805(3)(b)(iii)(E) (West 2008). As a result, the *Ross* court's discussion regarding the use of an unloaded gun is relevant to our analysis. Here, defendant's possession of an unloaded handgun required the State to present evidence that the gun could have been used as a club or bludgeon, or was actually used in a deadly manner. See *Ross*, 229 Ill. 2d at 276. The State failed to meet that burden.

¶ 27    In addition to the statutory factors, the trial court failed to consider the critical nonstatutory element: the potential term of defendant's sentence as an adult. Our supreme court has stated that the minimum sentence or term of years defendant would have to serve under the Criminal Code should be considered as a factor in addressing and weighing the competing interests. See *Clark*, 119 Ill. 2d at 14. In *Clark*, the court observed that the juvenile court's discretion to waive jurisdiction must be exercised within the limits of due process and must comport with the applicable statutory guidelines. As a threshold matter, the transfer statute " 'assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a full investigation.' " (Internal quotation marks omitted.) (Emphasis omitted.) *Clark*, 119 Ill. 2d at 12 (quoting *Kent v. United States*, 383 U.S. 541, 552-53 (1966)).

¶ 28    Here, the only mention of an adult sentence was defense counsel's brief reference in closing argument to the "possibility" of an enhanced sentence, without mention of a specific term. This reference was insufficient to satisfy the purpose of the transfer statute. The motion to transfer record contains no discussion of the minimum sentence or the term of years defendant would serve if he was transferred and tried in criminal court. The juvenile judge was not informed that defendant faced a term of 6 to 30 years in prison. The judge also was not informed that the 15-year gun enhancement was mandatory under the criminal law, resulting in a minimum of 21 years in the adult system. Basic notions of due process require more. See *Kent*, 383 U.S. at 552-53.

¶ 29    Since three transfer factors had no evidentiary support in the record and were not properly considered by the juvenile court, the court's transfer order was an abuse of discretion.

¶ 30    In light of our disposition on the transfer issue, it is not necessary to reach defendant's constitutional arguments.

¶ 31    We vacate the juvenile court's decision and remand for further proceedings in juvenile court. On remand, the State will have the opportunity to amend the charge in the juvenile petition to correctly reflect the elements of the offense as provided in section 18-2(a)(2) of the armed robbery statute. See *People v. Barnett*, 2011 IL App (3d) 090721; 720 ILCS 5/18-

2(a)(2) (West 2008).

¶ 32    The judgment of the circuit court of Peoria County is reversed. The order transferring defendant for trial as an adult under the Criminal Code is vacated, and the cause is remanded to juvenile court for further proceedings.

¶ 33    Reversed and vacated; cause remanded with directions.