NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200229-U

NO. 4-20-0229

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 3, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| TYREK WATKINS, | ) | No. 19CF386 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Juvenile court did not abuse its discretion granting the State's petition to transfer the minor's case to the criminal court.

¶ 2        On February 19, 2019, the State filed a petition for adjudication of wardship as to minor/defendant Tyrek Watkins (hereinafter minor or defendant), who was born on August 30, 2004. On February 26, 2019, the State filed a petition to prosecute defendant in criminal court. The juvenile court approved defendant's transfer to criminal court on July 2, 2019. On May 12, 2020, defendant waived his right to a jury trial and agreed to a stipulated bench trial. That same day, the trial court found defendant guilty of armed robbery and sentenced him to seven years in prison. Defendant appeals, arguing the juvenile court erred when it transferred him from juvenile to criminal court. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        On February 19, 2019, defendant, age 14, was arrested in connection with the armed robbery of a gas station in Danville.  In a petition for adjudication of wardship, the State alleged defendant committed armed robbery (720 ILCS 5/18-2(a)(2) (West 2018)), possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2018)), aggravated unlawful use of weapons without a concealed carry permit (720 ILCS 5/24-1.6(a)(1)(3)(A-5) (West 2018)), and aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(1) (West 2018)).  The State filed a motion to permit defendant's prosecution under Illinois criminal law pursuant to section 5-805(3)(a) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-805(3)(a) (West 2018)).

¶ 5        On March 15, 2019, the trial court held a probable cause hearing for purposes of the transfer petition.  Officer Samuel Bernardi of the Danville Police Department testified he was dispatched to the scene of an armed robbery at a Circle K located at 610 South Bowman Avenue that occurred at 1:12 a.m. on February 19, 2019.  The store clerk said he was robbed by two younger African-Americans.  Both suspects were wearing masks and one had a gun.  The suspects stole cigars and around $80.  After watching a security video of the robbery, Bernardi had a better description of the suspects and the handgun, which he identified as a 1911 style weapon with a silver chamber and an extended magazine.  The security footage corroborated what the store clerk told Bernardi.

¶ 6        Officer Ryan Birge, also of the Danville Police Department, testified he was working the night of the armed robbery.  While driving to the Circle K, Birge received information a witness saw a suspicious gray van driving east on Texas Street.  The witness's description of the vehicle matched a van reported stolen.  Birge left the area of the Circle K and drove toward the Kansas Street and Brewer Road area but did not see anything.  He then traveled east on Main Street

- 2 -

to further check the area around Brewer Road. He observed a gray van matching the description of the suspicious vehicle. He observed the van turn south on Kansas Street. By the time he got to Kansas Street, the vehicle was down the road and appeared to have its lights off. Birge followed the vehicle with his lights off. The van then stopped at South Kansas and Vine. Birge stopped 150 yards behind the van and watched through binoculars. No one got in or out of the van. When the van started moving again, Birge followed while notifying other officers where the van was headed and arranging for other officers to use "Stop Sticks" in the road if a chase occurred.

¶ 7        When Birge learned officers were set up at two different locations, he attempted to initiate a traffic stop on the van by first turning on his emergency lights and then activating the siren on his vehicle. The van accelerated, going over 85 miles per hour at one point. Birge, in his fully marked patrol car, stayed several car lengths behind the van. The van then ran over the "Stop Sticks" other officers had placed in the street. Birge slowed down so the other officers could clear the road and then caught back up with the van, which was moving erratically because of tire damage. The van then went off the road and into a yard, striking some trees. The suspects exited the van and ran. After quickly determining no one was still in the van, Birge followed two sets of footprints in the snow. He could hear the suspects running through the woods. A third set of footprints went in a different direction.

¶ 8        Birge continued to follow the two sets of footprints and eventually located defendant and Jakari W. hiding underneath a "cantilever[ed] area" of a home and took them into custody. The police eventually took the third suspect, Tyjuan Watkins, into custody. He was wearing a red sweatshirt. Tyjuan was on total home confinement at the time but had cut off his home monitor bracelet earlier in the evening. Tyjuan had $152 on his person and was wearing a ballistic vest carrier without the ballistic panels.

¶ 9 Birge testified he helped search the van. Another ballistic vest carrier, a bookbag that contained a large amount of cigars, and a 1911 style firearm, which was black with a chrome or silver chamber area and an extended magazine, were located in the van. The firearm matched the description of the weapon used in the robbery. Birge did not testify whether the firearm was loaded.

¶ 10 Birge heard Officer Bernardi state over the radio that the store clerk had identified Jakari W. and defendant as the individuals who robbed the store. Birge later determined the van had been reported stolen and the minors did not have permission to take the vehicle.

¶ 11 After hearing the evidence presented, the juvenile court found probable cause defendant had committed the charged offenses.

¶ 12 On June 20, 2019, the juvenile court held a best-interests hearing. Reese Carter, a Vermilion County probation officer, testified he had been a probation officer for 11 months in Vermilion County. He testified the Department of Juvenile Justice (DJJ) offered education, anger management, and substance abuse services. However, he was unaware of any other programs offered by DJJ. He had been assigned to be defendant's probation officer on September 18, 2018, in Vermilion County case No. 18-JD-103 before the armed robbery at issue in this case. While on probation, defendant failed to report for a scheduled office visit on October 11, 2018; he admitted drinking alcohol on November 1, 2018; he was suspended and later expelled from Danville High School on October 26, 2018; and he was arrested on December 3, 2018, with another individual who had pending charges in Vermilion County. Defendant was in violation of a home confinement order when he was arrested. Carter testified he had notified defendant of a drug and alcohol evaluation but defendant did not participate in the evaluation. Carter was unaware of any drug or alcohol treatment defendant was receiving in the juvenile detention center.

¶ 13        The State asked the juvenile court to take judicial notice of (1) the social history and supplemental social history reports prepared by probation officer Tina Quick and filed with the court in this case before his transfer (Vermilion County case No. 19-JD-21) in March and May 2019, respectively, (2) all court reports, and (3) prior testimony from the probable cause hearing in this case on March 15, 2019. Defense counsel did not object. At defendant's request, the court also took judicial notice of the social history report prepared by probation officer Quick and filed on September 13, 2018, in Vermilion County case No. 18-JD-103 without objection and admitted some evidence on behalf of respondent without objection, including court reports from the juvenile detention center, Rosecrance treatment reports, school reports, an article titled, "*The Risks Juveniles Face When They Are Incarcerated With Adults*," from the Justice Policy Institute, and our supreme court's opinion in *People v. Buffer*, 2019 IL 122327.

¶ 14        Defendant testified he was 14 years old. While at the juvenile detention center pending further proceedings in this case, defendant received counseling related to his marijuana usage from Kari Hoskins who worked for Rosecrance. Hoskins recommended defendant enroll in a drug treatment program. Hoskins spoke to him about a residential drug treatment program through Gateway. Defendant testified he wanted to participate in the residential program but could not because of his pending juvenile case. Defendant continued to see Hoskins and attend the drug and addiction treatment programs Hoskins helped with at the detention center. According to defendant, because of Hoskins and her agency, he was improving as a person beyond his drug problem. He enjoyed the services provided through the detention center, wanted to continue his treatment, and welcomed participating in a residential in-house treatment program. Defendant also testified he participated in group counseling. The group discussed addiction problems, being resilient during hard times, maintaining recovery, minimizing criminal or delinquent behavior,

managing peer pressure, problem solving, conflict resolution, and communication. Defendant stated he was willing to meaningfully participate in whatever services were available locally if he was given the opportunity to do so.

¶ 15        Defendant testified he enjoyed participating in sports such as football, wrestling, track, and baseball. He hoped to play college and professional football. Otherwise, he wanted to go to trade school and become an electrician. He enjoyed math and did well in algebra, was involved in Junior Reserve Officer Training Corps, attended a church program weekly when he was in seventh grade, and wanted to go again. He also wanted to build a better relationship with his father.

¶ 16        The prosecutor asked him why he did not get the drug and alcohol evaluation recommended by his probation officer when he was not detained. Defendant claimed he did not know what an alcohol evaluation was. He admitted he had only taken advantage of treatment programs while he was in custody at the juvenile detention center.

¶ 17        On July 2, 2019, the juvenile court issued a written decision on the State's petition to transfer defendant to adult court. The court noted the State introduced a social history report, a supplemental social history report, court reports from the juvenile detention center covering periods in 2019, and a transcript of the probable cause hearing without objection from defendant. Defendant's attorney introduced, without objection from the State, additional court reports from the juvenile detention center, a Rosecrance treatment status report dated June 19, 2019, a social history report from Vermilion County case No. 18-JD-103, and his seventh-grade performance report.

¶ 18        The juvenile court then discussed the statutory factors included in section 5-805(3)(b) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b) (West 2018)). The court noted

defendant was 14 years old when the alleged offenses occurred. The court found the facts in this case, if proven, constituted criminal behavior far beyond what is expected from a 14-year-old minor. The court noted defendant had a history of delinquency and police contacts, specifically noting defendant was named as a suspect in a reckless discharge of a firearm complaint in July 2018 and in an aggravated assault and aggravated unlawful use of weapon complaint in February 2019. Further, the court indicated defendant was adjudicated delinquent in Vermilion County case No. 18-JD-103 for unlawful use of a weapon (.22-caliber revolver) and sentenced to probation. In January 2019, the State moved to revoke defendant's probation because he was arrested for burglarizing a vehicle and possessing burglary tools. Defendant also failed to report for a scheduled office visit on October 11, 2018, drank alcohol on October 2, 2018, and was suspended from Danville High School for fighting on October 26, 2018.

¶ 19    The juvenile court noted defendant had "a moderate cannabis use disorder" and seemingly could benefit from residential treatment at Gateway in Springfield. The juvenile court noted defendant's assessment indicated defendant would receive mental health services while incarcerated. Finally, the court noted evidence indicated defendant had the ability to succeed academically.

¶ 20    As for the circumstances of the offense, the juvenile court found the charged offenses were "extremely serious." The court stated defendant allegedly had been involved in the armed robbery of a convenience store, a high-speed chase with the police in a stolen vehicle, and then a foot pursuit after the van was wrecked. The court noted the gun, ammunition, cigars, clothing, and body armor plates were recovered from the stolen van. Further, according to the court, the alleged offenses were premeditated, required planning, were committed in an aggressive manner, and defendant was not charged via an accountability theory. While no evidence showed

the offenses caused serious bodily harm, the court noted it presumed the store clerk suffered emotional trauma from the incident. As to whether defendant possessed a deadly weapon, the court noted the evidence did not indicate he was holding the gun during the robbery but was inside assisting with the armed robbery.

¶ 21      When considering the advantages of defendant receiving treatment within the juvenile justice system, the juvenile court found drug abuse and mental health services would be available to defendant whether he remained in the juvenile system or was transferred and prosecuted as an adult. The court was persuaded defendant's transfer to the criminal court was necessary because of defendant's criminal history, the serious nature of the charged offenses, and the safety of the public.

¶ 22      According to the juvenile court, defendant did not take advantage of available services until after he was placed in the detention center following his arrest in this case. As to the reasonable likelihood of defendant being rehabilitated before the jurisdiction of the juvenile court ended, the court stated:

> "The term 'reasonable likelihood'[ ] is difficult to define and changes with the facts of every case. Because of the Minor's age[,] there is a chance that he could mature and turn things around while still in the juvenile court['s] jurisdiction but that chance has to be weighed against the severity of the present charges and the safety of the public. The Minor's prior criminal history and contacts with the police supports the conclusion that to date there has been no rehabilitation of the Minor in the juvenile justice system. The evidence in this case supports the need to protect the public."

Finally, regarding the adequacy of punishment or services for defendant, the court stated:

"The Minor seems to have no fear of or respect for the juvenile justice system. Although services have been available to the Minor, he never took advantage of any services until he was held in the detention center after [his] arrest in the present case. The Minor has violated total home confinement orders. The Minor has allegedly violated several conditions of his probation sentence in case number 2018-JD-103. The Minor allegedly committed the serious offenses in the present case while on probation. The remedies available in the juvenile justice system have not deterred the Minor from continuing to commit serious offenses."

Noting it was required to give more weight to the seriousness of the alleged offenses and the minor's prior record of delinquency (705 ILCS 405/5-805(3)(b) (West 2018)), the court allowed the transfer petition, stating: "After giving careful consideration to all the factors as required by the discretionary transfer provisions and in particular to the seriousness of the offenses and the Minor's prior criminal history[,] the Court finds that it is not in the best interest of the public to proceed under the Act."

¶ 23        On December 2, 2019, after defendant's case had been transferred, defendant filed a motion to reconsider the transfer order. The motion was filed by a new attorney. After reviewing the transcripts, file, and order, defense counsel argued the prior transfer hearing had serious deficiencies which needed to be addressed, including ineffective assistance of counsel. Defense counsel noted the juvenile court and the parties were not aware of the correct potential sentence defendant faced in criminal court, potentially 58 years in prison if he was sentenced under the criminal law.

¶ 24        On January 7, 2020, the trial judge in the adult criminal court gave defendant permission to allow the juvenile judge to entertain defendant's motion to reconsider. On January

28, 2020, the juvenile court judge heard arguments on the motion. On February 19, 2020, the juvenile court denied the motion.

¶ 25        On May 12, 2020, the State and defendant stipulated to certain facts for a bench trial. The State dismissed all counts except the armed robbery charge against defendant. The same day, the trial court found defendant guilty of armed robbery and sentenced him, per agreement, to 7 years in prison to be served at 50% with 3 years of mandatory supervised release. Defendant received 450 days of presentence custody credit.

¶ 26        This appeal followed.

¶ 27                              II. ANALYSIS

¶ 28        On appeal, defendant challenges his transfer from juvenile to criminal court. Both defendant and the State agree this court must determine if the trial court abused its discretion in transferring defendant to the criminal court. We conclude it did not.

¶ 29                           A. Transfer Hearing

¶ 30        Defendant first argues his transfer hearing in the juvenile court failed to comply with statutory requirements and violated his due process rights because of a lack of evidence on some statutory and nonstatutory factors. Our supreme court has noted the procedure and factors to be considered at a juvenile transfer hearing are controlled by statute. *People v. Clark*, 119 Ill. 2d 1, 8, 518 N.E.2d 138, 141 (1987). The transfer statute is "rooted in the constitutional requirement of procedural due process." *Clark*, 119 Ill. 2d at 8, 518 N.E.2d at 141.

¶ 31        "[A] decision to transfer a juvenile from the jurisdiction of the juvenile court to the jurisdiction of the criminal court requires faithful adherence to the statutory requirements governing the transfer proceeding in light of the purpose of those requirements." *Clark*, 119 Ill. 2d at 12, 518 N.E.2d at 143. According to the supreme court: "[T]he purpose of any transfer

proceeding is to balance the best interests of the alleged juvenile offender, particularly as these interests relate to his or her potential for rehabilitation, against society's legitimate interest in being protected from criminal victimization perpetrated by minors." *Clark*, 119 Ill. 2d at 12, 518 N.E.2d at 143. While the decision to permit a juvenile to be prosecuted under the criminal law is a matter of judicial discretion, the Juvenile Court Act limits the exercise of the trial court's discretion. *People v. Moore*, 2011 IL App (3d) 090993, ¶ 21, 957 N.E.2d 555.

¶ 32        The statute at issue is section 5-805(3) of the Juvenile Court Act (705 ILCS 405/5-805(3) (West 2018)), which states:

> "If a petition alleges commission by a minor 13 years of age or over of an act that constitutes a crime under the laws of this State and, on motion of the State's Attorney to permit prosecution of the minor under the criminal laws, a Juvenile Judge assigned by the Chief Judge of the Circuit to hear and determine those motions, after hearing but before commencement of the trial, finds that there is probable cause to believe that the allegations in the motion are true and that it is not in the best interests of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws."

In determining whether to permit a juvenile to be prosecuted under the criminal law, "the court shall consider among other matters" a prescribed list of factors included within the statute. See 705 ILCS 405/5-805(3)(b) (West 2018). However, the statutory factors are not the only factors the juvenile court must consider.

¶ 33        According to our supreme court, "[t]he history of the transfer provision makes clear that a juvenile judge in a transfer proceeding must weigh relevant statutory and nonstatutory factors in striking the balance for society by transferring the alleged juvenile offender or in striking

the balance for the juvenile by retaining jurisdiction." *Clark*, 119 Ill. 2d at 14, 518 N.E.2d at 144. The supreme court has also noted "the mere recitation in the record that all statutory factors have been considered is not enough to affirm an order transferring a minor to criminal court." *Clark*, 119 Ill. 2d at 18, 518 N.E.2d at 145. Instead, "there must be sufficient evidence in the record as to each statutory factor to support the transfer order." *Clark*, 119 Ill. 2d at 18, 518 N.E.2d at 145. "Where the record fails to support the juvenile judge's recitation that all statutory factors were considered, there is an abuse of discretion." *Clark*, 119 Ill. 2d at 18, 518 N.E.2d at 146.

¶ 34       According to defendant, the State did not introduce evidence regarding the possible *de facto* life sentence defendant faced if he was transferred to the criminal court, evidence regarding the rehabilitative options available to defendant if he was tried as an adult, and evidence a "deadly weapon" was used in the offense. We address these arguments below.

¶ 35                                 1. *De Facto Life Sentence*

¶ 36       Citing *Moore*, 2011 IL App (3d) 090993, ¶¶ 27-28, and *Clark*, 119 Ill. 2d at 14, 518 N.E.2d at 144, defendant argues the potential sentence a minor could receive in criminal court is a critical nonstatutory element a juvenile court must consider when deciding whether to transfer a minor to adult court. Defendant does not argue the trial court did not know the minimum possible sentence defendant would face in adult court. However, defendant does argue the juvenile court did not have enough evidence because the court was not aware of the maximum sentence defendant could receive in the adult court, which according to defendant was 85 years in prison, a *de facto* life sentence, assuming he was convicted of and received consecutive sentences on all the charged offenses and received sentencing add-ons. See *People v. Buffer*, 2019 IL 122327, ¶ 41, 137 N.E.3d 763 (holding that a sentence less than 40 years in prison imposed on a juvenile offender was not a *de facto* life sentence.) However, the trial court was aware defendant could be sentenced to up to

45 years in prison on the armed robbery charge alone.

¶ 37    Even assuming, *arguendo*, defendant could have been sentenced to 85 years in prison, the fact the record does not reflect this does not make defendant's transfer *per se* invalid. The juvenile court was aware defendant faced a possible sentencing range of 6 to 45 years in prison, which is lengthy compared to the maximum sentence he could receive under the juvenile system.

¶ 38    This case is easily distinguishable from *Clark* and *Moore*. In *Clark*, 119 Ill. 2d at 14-16, 518 N.E.2d at 144-45, the record did not establish the juvenile court knew the minor faced a mandatory life sentence if convicted of the charged offenses. In *Moore*, 2011 IL App (3d) 090993, ¶ 28, the appellate court noted the record did not reflect the juvenile court was ever told the defendant in that case faced a sentence of 6 to 30 years in prison or that a 15-year gun enhancement was mandatory under the criminal law. In the instant case, defendant did not face a mandatory life sentence, and the trial court knew defendant could be sentenced to anywhere from a 6-year sentence to a *de facto* life sentence of 45 years. The juvenile court had sufficient information with regard to this nonstatutory factor.

¶ 39    Defendant also argues his trial counsel was ineffective for not informing the court defendant faced a possible sentence of 85 years in prison. However, to demonstrate ineffective assistance of counsel, a defendant must show his counsel's performance fell below an objective standard of reasonableness and counsel's performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984). To establish prejudice, a defendant must show a reasonable probability exists the result of the proceeding would have been different absent counsel's errors. *People v. Haynes*, 192 Ill. 2d 437, 473, 737 N.E.2d 169, 189 (2000). Defendant cannot meet this standard because it is not reasonably probable this information would have

- 13 -

induced the juvenile court to deny the State's motion to transfer considering the court already knew defendant potentially faced a lengthy sentence.

¶ 40                                 2. *Rehabilitative Options*

¶ 41        Section 5-805(3)(b)(iv) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b)(iv) (West 2018)) states juvenile courts shall consider "the advantages of treatment within the juvenile justice system including whether there are facilities or programs, or both, particularly available in the juvenile system."  Defendant acknowledges his probation officer testified the DJJ offered "education services, anger management, [and] substance abuse" programs.  However, defendant takes issue with the fact the State did not provide evidence about programs offered in the adult prison system so the juvenile court could compare the two.  Even so, the court had evidence of programs within the juvenile justice system, which satisfied the statutory requirement.

¶ 42        Defendant relies on *Clark*, 119 Ill. 2d 1, 518 N.E.2d 141, and *Moore*, 2011 IL App (3d) 090993.  However, once again, those cases are distinguishable from what occurred in this case as the juvenile courts there were without any evidence.  In *Clark*, our supreme court noted, "As to the availability of treatment and rehabilitative services, the judge heard only the opinion of the chief juvenile probation officer of Macon County, who stated, in answer to a question by the assistant State's Attorney, that he was unaware of any facilities."  *Clark*, 119 Ill. 2d at 19, 518 N.E.2d at 146.  In *Moore*, 2011 IL App (3d) 090993, ¶ 22, "no evidence was presented at the transfer hearing regarding the availability and advantages of treatment services in the juvenile system."

¶ 43                             3. *Evidence of a Deadly Weapon*

¶ 44        The juvenile court must also consider "whether there is evidence the minor possessed a deadly weapon."  705 ILCS 405/5-805(3)(b)(iii)(E) (West 2018).  Defendant argues

the State failed to present any evidence at the transfer hearing that the gun was loaded. Therefore, according to defendant, the State did not establish the gun was a deadly weapon. However, the juvenile court heard evidence defendant was not armed with the handgun, and the juvenile court found defendant did not possess a deadly weapon. As a result, the juvenile court did hear evidence on this factor, and defendant's argument is meritless. Again, defendant's reliance on *Moore* is misplaced as the situation there is distinguishable. In that case, the juvenile court found the juvenile possessed a deadly weapon without evidence the weapon was loaded and operable. *Moore*, 2011 IL App (3d) 090993, ¶¶ 23-24. In this case, the court found defendant was not armed with the handgun.

¶ 45                    B. Sufficiency of Evidence to Transfer Defendant

¶ 46           Defendant next argues the juvenile court abused its discretion by (1) relying on improper evidence, (2) disregarding evidence favorable to defendant when it analyzed the statutory factors for transfer, and (3) making findings not supported by the record. According to defendant's brief, "In raising these errors, [defendant] does not ask this Court to reweigh the factors. [Citation.] [Defendant] asks this court to find there was insufficient evidence in the record as to these factors to support the court's findings on each factor, and therefore its transfer order."

¶ 47           "Where a juvenile judge considers evidence on the statutory factors and any other relevant evidence, the resulting decision is a product of sound, judicial discretion and will not be disturbed on review." *People v. Morgan*, 197 Ill. 2d 404, 429, 758 N.E.2d 813, 828 (2001). Sections 5-805(2)(b) and 5-805(4) of the Juvenile Court Act (705 ILCS 405/5-805(2)(b), (4) (West 2018)), allow all evidence helpful in determining what is in the best interests of the minor and the public, including oral and written reports, to be admitted at a transfer hearing even if the evidence is not competent for the purposes of trial. Further, the juvenile court may rely on this evidence to

the extent of its probative value.

¶ 48        While the juvenile court is to consider all of the statutory and relevant nonstatutory factors in determining whether a transfer to adult court is appropriate, section 5-805(3)(b) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b) (West 2018)) makes clear some factors carry more weight than others in determining whether to transfer a minor to adult court. The two factors that carry the most weight are (1) the seriousness of the alleged offenses and (2) the minor's prior record of delinquency. 705 ILCS 405/5-805(3)(b) (West 2018).

¶ 49        As a result, we will take defendant's arguments out of turn. We will first look at defendant's arguments the juvenile court (1) made findings regarding the circumstances of the offenses not supported by the record and (2) erred when it considered allegations defendant had been a suspect in two unrelated cases as part of defendant's criminal history. We will then consider defendant's arguments the court failed to properly consider (1) his age, (2) evidence he could be rehabilitated before the juvenile court's jurisdiction ended, and (3) the adequacy of the punishment or services available to him in the juvenile system.

¶ 50                              1. *Circumstances of the Offense*

¶ 51        Based on the evidence presented at the transfer hearing, the trial court did not err in finding the offenses were "extremely serious" and committed in an aggressive and premeditated manner. Defendant and his accomplices committed an armed robbery at a convenience store, held the store clerk at gunpoint, wore masks to hide their identities, used a stolen van as a getaway vehicle, engaged in a high-speed chase with police, wrecked the van at the end of the chase, and then ran on foot from the police.

¶ 52        Defendant complains that the trial court mistakenly said the police recovered body armor plates and ammunition from the stolen van. From the stipulated facts presented at the

stipulated bench trial, we note the police did find a .45-caliber handgun with a loaded magazine and one round in the chamber, although the State did not offer evidence the handgun was loaded at the transfer hearing. The police also did not find body armor plates in the van. According to defendant, without evidence of the ammunition and/or body armor plates in the van, the State presented insufficient evidence of premeditation. We disagree. Defendant and his accomplice wore masks when they went into the store. Prior to our current COVID-19 climate, this constituted evidence of premeditation. Regardless of the juvenile court's misstatement, the State presented sufficient evidence for the court to conclude defendant and his accomplice inside the store committed the armed robbery in an aggressive and premeditated manner.

¶ 53    Defendant also takes issue with the trial court stating defendant was not charged through accountability. According to defendant, because he was not holding the gun or driving the stolen van, he must have been charged with armed robbery and aggravated fleeing and attempting to elude a police officer via an accountability theory. Regardless, defendant was inside the convenience store and played an active role in the armed robbery and actively participated in the aggravated fleeing and attempt to elude the police. Defendant was not simply standing outside acting as a lookout, and we find the trial court properly considered defendant's level of culpability in the commission of the offenses.

¶ 54    Defendant also argues the trial court erred when it stated it "could presume the store clerk suffered emotional trauma from having the gun pointed at him and felt threatened with bodily harm during the robbery" without any evidence supporting its presumption. We note whether anyone suffered emotional harm is not a statutory factor. Further, the trial court did not find the store clerk did suffer emotional harm. Instead, the court only stated one could presume the store clerk suffered emotional trauma. Even if the clerk did not suffer emotional trauma, this does not

mean the juvenile court erred in finding this was an extremely serious offense.

¶ 55                                    2. *Prior History*

¶ 56          Section 5-805(3)(b)(ii) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b)(ii) (West 2018)) requires juvenile courts to consider a minor's previous delinquent or criminal history. On this factor, the trial court noted defendant had a history of delinquency and police contacts. The court stated defendant was a named suspect in a complaint alleging the reckless discharge of a firearm on July 25, 2018, and a complaint alleging aggravated assault and aggravated unlawful use of a weapon for waving a firearm around on California Street in Danville. The court also noted a petition for adjudication of wardship was filed in Vermilion County on July 13, 2018, in case No. 18-JD-103, alleging defendant's unlawful use of a weapon. Defendant admitted the charge and was given probation.

¶ 57          On January 4, 2019, before the offenses at issue in this case, the State filed a petition to revoke defendant's probation for a variety of reasons. On December 3, 2018, he had been arrested for burglarizing a motor vehicle and being in possession of burglary tools. On October 2, 2018, he consumed four shots of alcohol. On October 26, 2018, defendant was suspended from Danville High School for fighting with another student. He had also violated a total home confinement order.

¶ 58          Defendant argues the trial court erred in considering the fact defendant on July 25, 2018, was a named suspect in a reckless discharge of a firearm complaint and on February 1, 2019, was a named suspect in an aggravated assault and aggravated unlawful use of a weapon complaint. Defendant acknowledges this information was included in a social history report provided to the juvenile court. Under sections 5-805(2)(b) and 5-805(4) of the Juvenile Court Act (705 ILCS 405/5-805(2)(b), (4) (West 2018)), all evidence helpful in determining what is in the best interests

of the minor and the public, including oral and written reports, may be admitted and relied upon to the extent of its probative value, even though the evidence may not be competent for the purposes of trial. Even assuming, *arguendo*, the court should not have considered this information, the court still had enough other information for this factor to weigh heavily against defendant.

¶ 59        Again, relying on *Clark*, 119 Ill. 2d at 18, 518 N.E.2d at 146, defendant argues the State must introduce more than mere allegations of police contacts before the court can consider such contacts as evidence of a juvenile's prior criminal history. Once again, defendant's reliance on *Clark* is misplaced as the situation here is factually distinguishable. In *Clark*, the supreme court noted the defendant had no history of violent criminal conduct and virtually no other criminal history whatsoever. That is not the case here.

¶ 60                                    3. *Age*

¶ 61        Defendant also argues the juvenile court did not properly consider his young age. The record does not reflect this.

¶ 62        Defendant was 14 years old when he committed the charged offenses. In its written order, the juvenile court stated:

> "The minor was 14 years old at the time of the alleged offenses. Normally, the younger the age the more favorable it is for the Minor. However, the facts in this case show the actions of the Minor, if proven, constitute criminal behavior far beyond what one would expect from a minor who is only 14."

The juvenile court's statement only shows the court was comparing defendant's behavior to his age. It does not mean the court did not take his age into consideration in making its decision to transfer defendant to criminal court.

¶ 63                4. *Rehabilitation and Adequacy of Punishment and Services*

¶ 64        Another factor the juvenile court must look at is whether the security of the public requires sentencing under the Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2018)). To do so, section 5-805(3)(b)(v) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b)(v) (West 2018)) requires the juvenile court to consider (1) "the minor's willingness to participate meaningfully in available services," (2) whether a reasonable likelihood exists the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction, and (3) "the adequacy of the punishment or services." The court noted a chance existed defendant "could mature and turn things around" before the expiration of the juvenile court's jurisdiction. However, as for the adequacy of punishment or services in the juvenile justice system, the court noted defendant had no fear or respect for the juvenile justice system. He had not taken advantage of services until he was detained at the juvenile detention center after he was arrested in this case. Prior to his arrest, defendant had violated home confinement orders, conditions of his probation in Vermilion County case No. 18-JD-103, and allegedly committed serious offenses while on probation.

¶ 65        Defendant argues the juvenile court's finding his "prior criminal history and contacts with the police support the conclusion that to date there has been no rehabilitation of the Minor in the juvenile justice system" is not supported by the evidence. According to defendant, the evidence showed he had made progress at the juvenile detention center. However, this progress was made while he was confined. The court noted defendant took advantage of services at the detention center. However, the court did not have to conclude defendant was rehabilitated simply because he was participating in services and making progress.

¶ 66        Defendant also contends the State did not present evidence defendant could not be rehabilitated in the juvenile system before expiration of the juvenile court's jurisdiction. However, the court did not find defendant could not be rehabilitated.

¶ 67    Finally, defendant argues the juvenile court limited its consideration of the adequacy of the juvenile system by considering the adequacy of juvenile probation. This is not accurate. As already stated, the juvenile court noted defendant took advantage of services while confined at the juvenile detention center. However, the court was presented with evidence defendant engaged in illegal activity when he was not confined, even when he was on probation. Thus, the trial court did not err in finding the remedies available in the juvenile justice system had not deterred defendant from committing serious crimes when he was not confined.

¶ 68                              C. Transfer Order

¶ 69    Considering the serious nature of the offenses in this case and defendant's prior history of delinquency before the offenses in this case occurred, which are factors entitled to more weight than the other statutory factors found in section 5-805(3)(b) of the Juvenile Court Act (705 ILCS 405/5-805(3)(b) (West 2018)), the trial court did not abuse its discretion by transferring defendant to adult court.

¶ 70                              III. CONCLUSION

¶ 71    For the reasons stated, we affirm defendant's transfer from juvenile court to adult criminal court.

¶ 72    Affirmed.